```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
JANICE LANG,                        )
     Plaintiff,                     )
                                    )
v.                                  ) Docket No. 05-10052-WGY
                                    )
JOHN E. POTTER, POSTMASTER GENERAL, )
UNITED STATES POSTAL SERVICE,       )
     Defendant.                     )
_____)
```

**DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

**Background On The Labor Relations Unit For USPS's Massachusetts District**

1. The Labor Relations staff for the USPS's Massachusetts district are responsible for providing information and guidance on various labor and employment matters to USPS supervisors, managers, postmasters and operational workers throughout the Commonwealth. See Deposition of Robert LoPreste ("LoPreste Dep."), p. 55-56, relevant pages attached to Memorandum of Law In Support of Motion for Summary Judgment ("Memo.") as Exhibit 1. Such matters include, but are not limited to, disputes concerning employment contracts, allegations of employment discrimination, collective bargaining negotiations, arbitration, and issuance of discipline. Id., p. 37-38.

2. The current manager of the Labor Relations unit, Mark Persson, is fifty-one years old and has worked at the USPS for nearly thirty years. See Deposition of Mark Persson ("Persson Dep."), p. 5-8, relevant pages attached to Memo. as Exhibit 2.

3. Mr. Persson became the manager of the unit in April 2003, after serving as a Labor Relations Specialist in the unit for approximately ten years. Id., p. 6-7.

4. Robert LoPreste, a Labor Relations Specialist for USPS's Northeast Regional Office, preceded Mr. Persson as manager of unit. Id., p. 7-8; LoPreste Dep., p. 8.

5. When he became the Manager of Labor Relations in April 2003, Mr. Persson's staff consisted of two Labor Relations

       Specialists:  Stephen Meier and Peter Attridge.  Persson Dep., p. 65.

6. Mr. Meier, a man in his late forties, began working at the USPS as a letter carrier in 1987.  See Deposition of Stephen Meier ("Meier Dep."), p. 6-7, relevant pages attached to Memo. as Exhibit 3.  The USPS later promoted Mr. Meier to Supervisor of Customer Services, a position he held for approximately ten years.  Id., p. 6.  In 1998, Mr. Meier accepted a detail assignment with the Labor Relations unit for a period of one year.  Id., p. 7-8.  When a permanent position opened in the unit in 1999, Mr. Meier applied for the position and, ultimately, was hired by Mr. LoPreste.  Id., p. 5, 7.

7. Mr. Attridge, who is fifty-two years old, has worked for the USPS since 1985.  See Deposition of Peter Attridge ("Attridge Dep."), p. 6, relevant pages attached to Memo. as Exhibit 4.  Mr. Attridge was Supervisor of Customer Services in 1988, and then became Manager of Customer Services in 1997.  Id., p. 6-7.  He also worked in the Labor Relations unit on several detail assignments from 1998 through 2002.  Id., p. 7.  In March 2003, Mr. LoPreste hired Mr. Attridge to fill a vacant Labor Relations Specialist position on a permanent basis.  Id., p. 6; see Deposition of David Couture ("Couture Dep."), p. 102, relevant pages attached to Memo. as Exhibit 5.

8. In 2003, Mr. Persson reported to David Couture, the then-Director of Human Resources for the Massachusetts District.  Couture Dep., p. 5-9.  Couture began working for USPS in 1973 as a mail handler.  Id., p. 7.  Throughout his long and distinguished employment with the USPS, the postal service promoted Mr. Couture to various management positions.  Id., p. 7-8.  In or about 1993, the USPS promoted Mr. Couture to Director of Human Resources, a position he held until his retirement in January, 2005.  Id., p. 6-8.

**Women In The Workplace**

9. Throughout his tenure as Director of Human Resources, Mr. Couture actively tried to recruit and hire women to positions in USPS.  Id., p. 103-104; see also Deposition of Melinda LaVecchio ("LaVecchio Dep."), p. 73-74, relevant pages attached to Memo. as Exhibit 6.

10. Indeed, under Mr. Couture's management women represented over 42 per cent of the district's workforce.  Couture Dep.,

      p. 95.  Also, more than half of the district's supervisory employees were women.  <u>Id.</u>, p. 102.

11. Despite Mr. Couture's success in diversifying the Massachusetts district overall, admittedly, the Labor Relations unit has not had a woman Labor Relations Specialist - however, that is not due to a lack of effort. Unfortunately, positions in the lean-staffed Labor Relations unit rarely become open, and when they have, the USPS has not received many women applicants for the positions.  <u>Id.</u>, p. 101-102; LaVecchio Dep., p. 74-75.

12. To counter this problem, Mr. Couture tried to recruit women in managerial positions from elsewhere in postal service for the Labor Relations unit, but with no success.  Indeed, Messrs. Couture and LoPreste asked Melinda LaVecchio, the Manager of Personnel, at various times to apply for vacancies in unit, but she declined.  LaVecchio Dep., p. 73-74.

13. In the past, Mr. LoPreste had even offered the position to Ann Marie Stoica, the former Postmaster of the Sutton, Massachusetts post office, but she reportedly declined the offer because her commute to work would have been too long.  <u>Id.</u>, p. 71-72; LoPreste Dep., p. 76.

**Janice Lang's Work History At USPS**

14. Plaintiff Janice Lang began working at the USPS in 1984 as a mail handler.  Deposition of Janice Lang ("Lang Dep."), p. 37, relevant pages attached to Memo. as Exhibit 7.  The USPS hired Lang to the position of Personnel Assistant in 1985, where her primary responsibility was administrative work, with some purported involvement in settling third-party claims against the USPS.  <u>Id.</u>, p. 37-39.  In 1991, the USPS hired Ms. Lang to Injury Compensation Specialist after she performed the functions of that position on a detail assignment.  <u>Id.</u>, p. 39.  In 1992, the postal service moved Ms. Lang to the position of Human Resources Specialist Training, where her responsibilities included administrative work, career counseling to postal employees, and training employees on USPS employment policies.  <u>Id.</u>, p. 39-41.

15. Before 2003, Ms. Lang never held a position within USPS where she was responsible for responding to employment disputes or grievances, nor had she served as a manager within the postal service.  <u>Id.</u>, p. 37-42, 53-56.

16. In 2000, Ms. Lang graduated from Massachusetts School of Law with a juris doctorate, and passed the Massachusetts bar examination in 2002. Lang Dep., p. 27, 29.

**Ralph DiVasta's Work History At USPS**

17. The postal service has promoted Ralph Divasta to various management positions throughout his employment with the USPS. See Deposition of Ralph Divasta ("Divasta Dep."), p. 31-42, relevant pages attached to Memo. as Exhibit 8.

18. Indeed, before 2003, the USPS promoted Mr. Divasta to Relief Supervisor and Supervisor of Transportation Operations; Supervisor of the Multi-Position Letter Sorting Machine; Coordinator of Attendance and Leave; and Supervisor of Distribution Operations. Id.

19. Through these various positions, Mr. Divasta gained a fair amount of experience in supervising employees and advising managerial staff. Id. His responsibilities also included handling the second step of the employee grievance process outlined in the postal service's collective bargaining agreement. Id., p. 38-39.

20. As the Coordinator of Attendance and Leave, Mr. Divasta also trained employees and managers on various topics, such as the USPS's grievance procedures found in the collective bargaining agreement and the Family Medical Leave Act ("FMLA"). Id., p. 38.

21. He also served as the FMLA Coordinator, was a member of the Threat Assessment Team in his office, and served as a member of the team responsible for negotiating the collective bargaining agreement with the union. Id., p. 38-39.

**E.    USPS's General Hiring Process**

22. In the USPS's Massachusetts district in 2003, before a manager or "selecting official" could hire or promote an applicant to fill a vacancy in his or her unit, he or she had to first obtain approval from the Northeast Regional Office to do so. Couture Dep., p. 12-14.

23. Once the Regional Office granted approval for the hire, the local Personnel office began its process to post a vacancy announcement. LaVecchio Dep., p. 19.

24. All positions within the USPS have official job descriptions

and corresponding vacancy announcements, which were prepared and maintained by USPS in its headquarters in Washington, D.C. Id., p. 37.

25. If USPS was posting a vacancy announcement on a local level (i.e., by district, city, state, or region), the local Personnel office could, at the direction of the selecting official, include additional requirements on the vacancy announcement. Id., p. 19, 67.

26. When responding to these announcements, USPS directed applicants to submit their applications, entitled Form-991's, to the local Personnel Department. Id., p. 12.

27. In 2003, if the USPS was posting the vacant position nationally, USPS's headquarters office handled the announcement and used the postal service's standard vacancy announcement for the position. Id., p. 19, 37, 67.

28. When responding to these announcements, the USPS directed applicants to submit their applications to the Personnel office in the area where the position was located. Id., p. 12-13.

29. At the end of the vacancy announcement period, the Personnel office gathered the applications and, if there were five or more applications, submitted them to the "Review Board." Id., p. 13; Persson Dep., p. 16-17.

30. The selecting official selected the members of the Review Board, who consisted of management employees who typically had experience in or detailed knowledge about the vacant position. LaVecchio Dep., p. 12, 33.

31. The Review Board then reviewed the applications, sometimes in conjunction with applicant interviews, and narrowed the pool of applicants to a small number. Id., p. 18, 35; Persson Dep., 18.

32. The Review Board could exclude an applicant from the small pool for various reasons, including for lack of experience or for failing to submit a properly completed Form-991. LoPreste Dep., p. 25-26.

33. Once it completed its task, the Review Board sent the small number of applications to the selecting official so that he or she could interview the applicants and then make a hiring decision or decide to re-post the vacancy announcement.

       LaVecchio Dep., p. 14.

34.    While USPS selection procedures call for the district manager's approval of the selecting official's choice for a hire or promotion, the decision of whom to hire or promote, in practice, rest with the selecting official.  Couture Dep., p. 35-36.

**USPS Posts A Labor Relations Specialist Position in March 2003**

35.    In March 2003, Mr. Persson initiated the process to hire a person to fill the Labor Relations Specialist position he left vacant once USPS promoted him to manager of the unit. Persson Dep., p. 8-9.

36.    Indeed, after receiving approval to fill the vacant position, Mr. Persson contacted Ms. LaVecchio, Manager of Personnel, and directed her to post a vacancy announcement for the position.  Id., p. 9.

37.    Ms. LaVecchio created the vacancy announcement based upon a previous announcement for the same position that she had posted at the direction of Mr. LoPreste.  LaVecchio Dep., p. 19, 25.

38.    USPS posted the vacancy announcement on March 26, 2003.  See Vacancy Announcement, dated March 26, 2003, attached to Memo. as Exhibit 9.

39.    The announcement included nine (9) requirements for applicants seeking to fill the Labor Relations Specialist position at the Grade 17 level on the federal employee pay scale, four (4) more requirements than called for by the standard announcement for the position.  Id.  It also included ten (10) requirements for applicants seeking to fill the Labor Relations Specialist position at the Grade 19 level on the federal employee pay scale, four (4) more requirements than called for by the standard announcement for the position.  Id.

40.    The four requirements added to the announcement by Mr. LoPreste for the Grade 17 and 19 Labor Relations Specialist Positions were identical, requesting that applicants have: the ability to use computers systems to collect information, analyze data, and present findings; knowledge of the Rehabilitation Act and the American Disabilities Act, as it pertains to hiring; the ability to evaluate and make recommendations for hiring decisions requiring reasonable

> accommodations; and knowledge of word and data processing, including spreadsheet software.  See Exhibit 9.

41. Only USPS employees residing in Massachusetts were eligible to apply for the position.  Id.; LaVecchio Dep., p. 27-28.

42. Ten USPS employees applied for the position, including Ms. Lang, Mr. DiVasta, Miles Walcott, Roger Kender, and Richard Krinsky.  See Selection Form for Vacancy Announcement 03-020, attached to Memo. as Exhibit 10.

43. At the close of the announcement period, the Personnel office gathered all of the applications and submitted them to the Review Board.  LaVecchio Dep., p. 32-34.

44. The Review Board members were Mr. LoPreste, David Papa, the Manager of Equal Employment Opportunities (and a former manager of the Labor Relations unit), and Donna Legro, the Postmaster of the Reading, Massachusetts post office.  Persson Dep., p. 17-18.

45. The Review Board narrowed the pool of applicants down to Ms. Lang, and Messrs. Kender and Krinsky.  Id., p. 20.

46. Although the Board believed Mr. Divasta was a good candidate for the position based on his experience and reputation with the postal service, it had to reject Mr. Divasta's application because it did not comply with the Form-991 requirements.  LoPreste Dep., p. 25-26, 46-48, 58-60; DiVasta Dep., p. 58.

47. Messrs. Persson and Couture interviewed Ms. Lang, and Messrs. Kender and Krinsky on May 1, 2003.  Complaint, ¶ 10; Persson Dep., p. 30-34.

48. Mr. Couture often participated in such interviews because, considering the fact that he had to concur with the manager's hiring decision, it made the process more efficient.  LoPreste Dep., p. 15.

49. Messrs. Persson and Couture interviewed the three candidates by asking them a series of identical questions that Mr. Persson had prepared.  Persson Dep., p. 28-30.  The questions concerned areas that a Labor Relations Specialist would have to be familiar with in order to perform his or her functions.  Id.

50. Messrs. Persson and Couture separately scored each

  candidates' answers to the questions and compared the scores at the end of the interviews. Couture Dep., p. 63-64.

51. Ms. Lang claims that at the beginning of her interview with Messrs. Persson and Couture on May 1, 2003, Mr. Couture informed her that management would re-post the vacancy announcement if Messrs. Persson and Couture did not find the three candidates qualified for the job. Lang Dep., p. 78-81. She also claims that at the end of the interview, Mr. Persson told her that she did a "great job." Id., p. 81-83.

52. Mr. Persson decided not to hire Ms. Lang for the position, despite that fact that she had just graduated from law school, because her lack of experience in supervising employees and in handling labor and employment matters. Persson Dep., p. 32-33.

53. He also decided not to hire Mr. Krinsky, a former practicing attorney with over 20 years legal experience, for the position because Mr. Krinsky was unprepared for the interview. Id., p. 32, 35.

54. Ultimately, Messrs. Persson and Couture decided to re-post the vacancy announcement agency-wide. Id., p. 35, 37; Couture Dep., p. 62, 80-81.

55. Ms. Lang claims that Mr. Persson informed her that he did not select her for the position because he was looking for someone who could "walk" right into the job. Lang Dep., p. 84, 87-88.

**USPS Re-Posts The Labor Relations Specialist Position in May 2003**

56. In May 2003, Mr. Persson contacted Ms. LaVecchio and directed her to post the vacancy announcement for the Labor Relations Specialist position nationally. LaVecchio Dep., p. 37.

57. Accordingly, Ms. LaVecchio contacted the headquarters office, which is responsible for posting national vacancy announcements. Id.

58. Headquarters posted the USPS's standard vacancy announcement for the Labor Relations Specialist position on May 27, 2003. See Vacancy Announcement, dated May 27, 2003, attached to Memo. as Exhibit 11.

59. The standard vacancy announcement has five (5) requirements

      for applicants seeking to fill the Labor Relations Specialist position at the Grade 17 level, and six (6) requirements for applicants seeking to fill the Labor Relations Specialist position at the Grade 19 level.  <u>Id.</u>

60. The USPS did not require those who previously had applied for the March 26, 2003 vacancy announcement to reapply for the May 27, 2003 vacancy announcement.  Persson Dep., p. 55; LaVecchio Dep., p. 59-60, 76-77.  It did, however - pursuant to its hiring procedures - allow applicants for the March 26, 2003 vacancy announcement to submit revised Form-991's.  Persson Dep., p. 55; LaVecchio Dep., p. 59-60, 76.

61. The USPS encourages managers to advise employees on how to improve their candidacy for promotions with the postal service.  Persson Dep., 53-54; LaVecchio Dep., 60.  Such advice is available to any employee who wishes to take advantage of the opportunity.  Persson Dep., p. 146-147.

62. In fact Messrs. DiVasta and Walcott sought advice from Mr. LoPreste on how to improve their Form-991's before submitting them in response to the May 27, 2003 vacancy announcement.  DiVasta Dep., p. 49-51; LoPreste Dep., p. 66-67.

63. As with the first vacancy announcement, at the close of the announcement period, the local Personnel office gathered all of the applications and submitted them to the Review Board.  See LaVecchio Dep., p. 34-35.

64. The Review Board members for this vacancy announcement were Larry McDonough, a Northeast Area Labor Relations Specialist, Carl Augustinho, a Workplace Intervention Analyst, and Pam Boudreau, the Postmaster of the Ayer, Massachusetts post office.  Persson Dep., p. 57-58.

65. The Review Board interviewed each applicant and then narrowed the pool of applicants down to Ms. Lang, and Messrs. DiVasta and Walcott.  <u>Id.</u>, p. 61.

66. On October 8, 2003, Mr. Persson interviewed each of the candidates with the assistance of Messrs. Attridge and Meier, his two staff members.  <u>Id.</u>, p. 64-65.

67. Again, Mr. Persson prepared a series of identical questions, with some assistance from his staff, for the three candidates.  <u>Id.</u>  The questions concerned areas that a Labor Relations Specialist would have to be familiar with in order

       to perform his or her functions.  Id.

68. Mr. Persson instructed Messrs. Attridge and Meier to score each of the candidates's answers to the questions on a scale of 1 (poor) to 5 (excellent).  Id.; Meier Dep., p. 21.

69. After interviewing all of the candidates, Messrs. Persson, Attridge, and Meier met to compare their scores of the candidates' responses to the prepared questions and to discuss their assessments of the candidates.  Meier Dep., p. 22-23.

70. Messrs. Persson, Attridge, and Meier scored Ms. Lang's answers as 47, 51, and 47, respectively.  See Interview Questions notes on J. Lang by M. Persson, dated October 8, 2003, attached to Memo. as Exhibit 12; Interview Questions notes on J. Lang by P. Attridge, dated October 8, 2003, attached to Memo. as Exhibit 13; Interview Questions notes on J. Lang by S. Meier, dated October 8, 2003, attached to Memo. as Exhibit 14.

71. Mr. DiVasta's answers received scores of 52, 60, and 51 from Messrs. Persson, Attridge, and Meier respectively.  See Interview Questions notes on R. DiVasta by M. Persson, dated October 8, 2003, attached to Memo. as Exhibit 15; Interview Questions notes on R. DiVasta by P. Attridge, dated October 8, 2003, attached to Memo. as Exhibit 16; Interview Questions notes on R. DiVasta by S. Meier, dated October 8, 2003, attached to Memo. as Exhibit 17.

72. Finally, Messrs. Persson, Attridge, and Meier scored Mr. Walcott's answers as 30, 38, and 30, respectively.  See Interview Questions notes on M. Walcott by M. Persson, dated October 8, 2003, attached to Memo. as Exhibit 18; Interview Questions notes on M. Walcott by P. Attridge, dated October 8, 2003, attached to Memo. as Exhibit 19; Interview Questions notes on M. Walcott by S. Meier, dated October 8, 2003, attached to Memo. as Exhibit 20.

73. In addition to receiving higher scores than the other candidates, Mr. Persson generally was impressed by the way Mr. DiVasta conducted himself during the interview.  Persson Dep., p. 76.

74. While, Mr. Persson found Ms. Lang to be generally prepared for her interview, he found her responses to be otherwise unremarkable.  Id., p. 32-33.  Even Ms. Lang admits that her performance during her interviews could have been better and

        that she did poorly on some of the interview questions. Lang Dep., p. 82, 115.

75. Despite Mr. DiVasta's high scores, Mr. Meier recommended that Mr. Persson post the vacancy announcement for a third time in order to find even better qualified candidates. Meier Dep., p. 64.

76. Nevertheless, because the position had been vacant since April 2003, and Mr. Persson believed that Mr. DiVasta could perform well in the position immediately with little training, he ultimately decided to hire Mr. DiVasta. Persson Dep., p. 77, 151.

77. Ms. Lang's age and/or gender was not a factor in Mr. Persson's decision not to hire her for the position. Id., p. 152.

78. Similarly, Mr. DiVasta's age and/or gender was not a factor in Mr. Persson's decision to select him for the position. Id., p. 152-53.

79. Indeed, Mr. Persson selected Mr. DiVasta over Ms. Lang (and Mr. Walcott) because he believed Mr. Divasta, based upon his prior positions with USPS and his superior responses to the interview questions, had more experience in dealing with labor and employment issues than Ms. Lang. Id., p. 76-77, 90.

80. Ms. Lang's inexperience in these areas came through during her interview in her inability to handle certain questions that were posed to her, despite having already heard some of the same questions in her first interview. Id., p. 72-73.

81. Since Mr. Persson's selection of Mr. DiVasta for the Labor Relations Specialist position, Ms. Lang has worked in the Labor Relations unit on a detail assignment. Id., p. 149.

82. Based on Ms. Lang's performance in the unit as compared with Mr. DiVasta's performance in the unit when he first began in the position, Mr. Persson is convinced that he selected the best qualified position for the job. Persson Dep., p. 94. Indeed, Ms. Lang's job performance has failed to instill confidence in her co-workers. Persson Dep., p. 149-150. Several employees have approached Mr. Persson and have expressed their dissatisfaction with Ms. Lang's ability to lead and give clear directions. Id. Mr. Persson feels that Ms. Lang's inability to give adequate advice to employers is

a clear reflection of her inexperience in labor and employment matters.  <u>Id.</u>, 149.

                              Respectfully submitted,

                              Michael J. Sullivan
                              United States Attorney

                         BY:  /s/ Damian W. Wilmot
                              DAMIAN W. WILMOT
                              Assistant U.S. Attorney
                              Moakley Federal Courthouse
                              One Courthouse Way, Suite 9200
                              Boston, MA 02110
Dated: March 27, 2006         (617) 748-3398