**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Docket No. 05-10052-WGY

| | |
|---|---|
| JANICE E. LANG,<br>               Plaintiff, | ) ) ) |
| v. | ) ) |
| JOHN E. POTTER, Postmaster General,<br>               Defendant. | ) ) ) |

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S CONCISE STATEMENT OF**
**MATERIAL FACTS AND SUBMISSION OF ADDITIONAL MATERIAL FACTS**

I      DEFENDANT'S MATERIAL FACTS TO WHICH THERE ARE NO OBJECTIONS

Plaintiff offers no objection to the following material facts as described by Defendant in its Concise Statement of Material Facts:

Paragraphs 1, 3, 4, 5, 8, 12, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 42, 43, 44, 45, 47, 48, 51, 54, 56, 57, 58, 59, 60, 63, 64, 66, 69, 70, 71, 72, 75, 76, 81.

II     OBJECTIONS TO DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS

Paragraph 2. In his 2004 EEO Investigative Affidavit, Mr. Persson identified Mr. Attridge's age as approximately 49. Exhibit 1. The balance of the paragraph is not contested.

Paragraph 6. In his 2004 EEO Investigative Affidavit, Mr. Persson identified Mr. Meier's age as approximately 43 years. The balance of Paragraph 6 is not contested. Exhibit 1.

Paragraph 7. Mr. Attridge was awarded the position of labor relations specialist by Robert Lopreste in 2003 as a noncompetitive lateral transfer. The balance of Paragraph 7 is not contested. Exhibit 2, Attridge deposition, page 10-11.

Paragraph 9. Mr. Couture testified that he desired to have more women in human resources in specific functional areas. Exhibit 3, Couture deposition, pages 103-104.

Paragraph 10. Mr. Couture testified that 64 or 65 EAS employees reported to him, and of those, more than half were female. Exhibit 3, Couture deposition, page 102. According to the

1

Affirmative Action material provided for the 2002 FY for Middlesex Central Performance Cluster, females held approximately 21% of the district's supervisory positions. Exhibit 4.

Paragraph 11. Since the early 1990's, Labor Relations Specialists' positions have become open on a few occasions. Each time the position was filled by a male candidate. (Mark Persson-reorganization; Dick Venti replaced Joseph McClusky, Stephen Meier replaced Dave Papa and Peter Attridge replaced Dick Venti). Exhibit 5, Lopreste deposition, 9-12.

Paragraph 14. According to her 991, Lang began her employment with the USPS as a mail handler in 1984. In 1985, she was promoted to Personnel Assistant. In 1992, she was promoted again to Human Resources Specialist (injury compensation unit and training), a position she continues to formally hold today. In those positions, she became intimately familiar with the National Agreements, federal and postal service regulations regarding employment, including sexual harassment, reasonable accommodations, FMLA, workplace violence, wage and hour and handling controversions relating to work related injuries. Responsibilities also included preparation of reports, investigations, assisting in grievance resolution, extensive training/presentations and career counseling. In addition, Lang was assigned to details including acting manager (as needed) injury compensation from 1986-1992, Officer in Charge, Dunstable post office from 1988-1989, acting manager of training in 2000 through 2001 and 2002 and, since 2004, she has been assigned to a detail as a labor relations specialist. Exhibit 6, Lang deposition page37; Exhibit 7, Persson deposition page 149; Exhibit 8, Lang's 991.

Paragraph 15. Lang testified that she had supervisory experience, supervising training technicians and a secretary in her office and as acting manager on details, including acting manger of training and officer in charge of Dunstable Post Office. Exhibit 6, Lang deposition, pages 54-58; Exhibit 8, Lang's 991.

Paragraph 16. In addition to her law degree in 2000, Lang received her BS from Boston University in 1963, her Masters in Education from Boston State College in 1967 and several other college courses and certificates, including mediation and labor law. Exhibit 8.

Paragraph 33. Upon completing its task, the Review Board, in writing, informs the personnel unit of the selected candidates for the short list to interview. Notes utilized by the Review Board in their selection process are destroyed or discarded. Once the Selecting Official is notified by the personnel unit of the short list, interviews are scheduled and hiring decisions are made thereafter. Exhibit 9, Admission Number 1.

Paragraphs 39/40. The differences in the first posting as compared to the standard vacancy announcement were not limited to those described in Paragraph 39. The Functional Purpose was reduced from "resolves complex..." to "resolves..." and requirement 5 (level 17) and 6 (level 19) had the writing component eliminated. Exhibit 10, March 2003 job posting; Exhibit 11, May 2003 job posting.

Paragraph 41. The job posting for the labor relations specialist position allowed for career employees in the Middlesex Central Performance Cluster and within the commuting distance of the vacancy office in contiguous districts, which could include New Hampshire, Connecticut and Rhode Island. Exhibit 10.

Paragraph 46. Mr. Lopreste could not recall a great deal about why Mr. Divasta was rejected by the Review Board. He speculated that the form of Mr. Divasta's application may have been confusing and not 'processed' in a particular way. Mr. Lopreste could not recall any particular concerns he may have had with Mr. DiVasta's 'star' format. Exhibit 5, Lopreste deposition, pages 58-60. Mr. Lopreste knew Mr. DiVasta and believed he did a good job for the USPS. Exhibit 5, Lopreste deposition, page 44.

Paragraph 49. Mr. Persson testified that a series of questions were asked of the three candidates. There was no indication who prepared the questions. Mr. Persson and Mr. Couture each asked questions. No copies of the notes, questions or answers were maintained. Exhibit 7, Persson deposition, pages 28-31.

Paragraph 50. There is no testimony that Mr. Persson or Mr. Couture separately scored the answers and compared the scores at the end of the interviews. Exhibit 3, Couture deposition, pages 63-64.

Paragraph 52. Mr. Persson testified at his deposition that he did not promote Ms. Lang at the end of the first interview due to her lack of experience in labor relations; supervisory experience was not discussed. Exhibit, 7, Persson deposition pages 32-33. However, Lang testified differently. See paragraph 55.

Paragraph 53. In addition to his lack of preparation, Mr. Krinsky was not hired for the position due to his attitude during the interview. Exhibit 7, Persson, deposition, page 35. Despite Krinsky's attitude and lack of preparation, he was considered a better candidate than Lang. Exhibit 7, Persson deposition page 34.

Paragraph 55. Lang testified that Persson also indicated that she wasn't selected because she did not have advocacy training. Exhibit 6, Lang deposition, page 84.

Paragraph 61. Plaintiff acknowledges that employees who are rejected at the Review Board stage may seek guidance from managers in improving their chances for future promotions. However, there are potential problems/conflicts if the advice is coming from the selecting official or potential interviewers while the position is still in the recruitment process, including potential questions for the interview. Exhibit 12, LaVecchio deposition, pages 83-84.

Paragraph 62. Mr. Lopreste noted in his deposition that Mr. Walcott approached him and asked him why he was not recommended for the position. There is no reference to improving his 991. Exhibit 5, Lopreste deposition, page 67.

3

Paragraph 65. The Review Board interviewed 5 candidates for the re-posting. Exhibit 7, Persson, deposition pages 61-62.

Paragraph 67.  As noted in paragraph 49 above, there was no clear testimony that Persson prepared questions for the first set of interviews in May 2003.  As for the second round of interviews in October, 2003, Persson prepared the interview questions, with assistance from his staff, after knowing the identities of the candidates.  The questions may have been relevant, but were skewed in favor of DiVasta's 'experience' with attendance and grievance handling.  See Plaintiff's facts, paragraph 36.

Paragraph 68.  The scoring system was 1-5, but no scoring grid was developed, answer key did not exist, a passing grade was not established and the interviewers did not know all of the answers to the questions. See Plaintiff's Facts, paragraphs 33-34.

Paragraph 73.  Persson, as well as the other interviewers, were more lenient to DiVasta than to Lang. See Plaintiff's Facts, paragraph 35.

Paragraph 74.  The facts alleged in this paragraph refer to the wrong interview.  Persson found Lang to be generally prepared and her responses unremarkable for the first interview in May 2003, not the second interview in October 2003.  See Plaintiff Facts, paragraph 35.  Similarly, the references to Lang's testimony is misplaced.  During the first interview, Lang indicated that there were two questions she did not know but did 'very good' for the interview on whole.  Exhibit 6, Lang, deposition pages 81-82. As for the second interview, Lang testified she did 'very well.' and may have 'struggled' on one question.  Exhibit 6, Lang deposition page 115.

Paragraph 77. Plaintiff acknowledges that Persson testified to same.  However, Plaintiff maintains that her age and gender were factors in the decision not to select her and to select DiVasta, a male who was 20 plus years her junior.  The facts supporting same are described in Plaintiff's Opposition to Defendant's Motion for Summary Judgment on pages 12 to 16.

Paragraph 78.  Plaintiff acknowledges that Persson testified to same.  However, Plaintiff maintains that her age and gender were factors in the decision not to select her and to select DiVasta, a male who was 20 plus years her junior.  The facts supporting same are described in Plaintiff's Opposition to Defendant's Motion for Summary Judgment on pages 12 to 16.

Paragraph 79.  Plaintiff acknowledges that Persson testified to same in his deposition. However, as noted herein and in Plaintiff's Facts and Opposition to Defendant's Motion for Summary Judgment, Plaintiff maintains that DiVasta was selected due to his age and gender. The interview process was biased, flawed and skewed in favor of DiVasta.  Plaintiff's Facts, paragraphs 4, 7, 10, 14, 15-38.

Paragraph 80.  According to Persson, he also indicated that Lang did 'pretty good' during the interview with the exception of her being nervous, but she overcame that.  Exhibit 7, Persson,

deposition page 73.  Plaintiff maintains, as stated herein, that Persson and the others were more lenient to DiVasta than to her in assessing their interviews.

Paragraph 82.  Persson testified that Lang has been in a labor relations detail, has not received any complaints, but has received comments from others, critical of her advice, similar to comments that other labor relations specialists have also received.  Persson indicated that Lang is doing a good job, she is a hard worker and very diligent, tries to improve herself all the time.  She is a good worker.  Persson has no regrets that she is on his staff.  Exhibit 7, Persson deposition, pages 149-151.

III    PLAINTIFF'S MATERIAL FACTS

1.    The Labor Relations Specialist position as posted in March, 2003 and again in May, 2003 was the first position posted by Mark Persson since he became the Labor Relations Manager in 2003.  Exhibit 7, Persson Deposition, page 8.

2.    As the Selecting Official, Mr. Persson is responsible for selecting the members of the Review Board.  Persson denied any involvement in the selection of the Review Board for either the original posting or the re-posting.  Exhibit 7, Persson deposition, page 24; Exhibit 5, Lopreste deposition, page 18; Exhibit 12, LaVecchio deposition, pages 12, 32, 52.

3.    The original job posting and its requirements were done without any review of same being conducted by Mr. Persson.  Mr. Persson was not aware that the job posting had requirements beyond the standard vacancy announcement. Exhibit 7, Persson deposition, pages 10-13; Exhibit 12, LaVecchio deposition, 19-26.

4.    Neither the March, 2003 nor the May, 2003 job posting for labor relations specialist required operational experience nor supervisory experience.  Exhibits 10, 11.  Exhibit 7, Persson deposition, pages 142-144; Exhibit 3, Couture deposition, page 86; Exhibit 12, LaVecchio deposition, page 67. Neither Attridge nor Meier supervises any employees as labor relations specialists.  Exhibit 2, Attridge deposition, page 40; Exhibit 13, Meier deposition, page 53.  Advocacy training was not a requirement for the position.  Exhibits 10, 11.  Exhibit 13, Meier deposition, page 31.  Grievance handling is not a prerequisite for the job.  Exhibit 7, Persson deposition, page 113.

5.    Once the Review Board completes its assessment of the candidates' application materials, it is required to advise the personnel unit, in writing, of the 'short list' of candidates for the selecting official to interview.  The March 2003 Review Board did not submit a 'short list' of candidates in writing to the personnel unit.  Exhibit 3, Couture deposition pages 28, 56; Exhibit 12, LaVecchio deposition, 35; Exhibit 5, Lopreste deposition, page 63.

6.    A Review Board can weed out candidates based upon a comparison of qualifications with other candidates. Exhibit 3, Couture, deposition page 23.  Review Boards can

choose to screen 'out' or 'in' those applications (991) that are not 'in a star' format. Exhibit 3, Couture, deposition pages 23-24.

7.     Any notes maintained by the Review Board in assessing the candidates for the March, 2003 and May, 2003 postings were destroyed or discarded. It is USPS policy and practice not to maintain Review Board notes once the Review Board has completed its assignment. Exhibit 12, LaVecchio deposition pages 14-15; Exhibit 3, Couture, deposition pages 26-27; Exhibit 5, Lopreste, deposition page 27; Exhibit 9, Admission number 1.

8.     During the first posting process, Ms. Lang was interviewed by Mr. Person and Mr. Couture. Prior to the beginning of the interview, Mr. Couture announced to Ms. Lang that the USPS was going to re-post the position nationwide if the three candidates, Ms. Lang, Mr. Krinsky and Mr. Kender, were deemed not qualified for the position. Exhibit 6, Lang deposition, pages 77-78.

9.     Immediately after the conclusion of the initial interview with Ms. Lang, Mr. Persson indicated that she had performed well during the interview. Mr. Couture concurred. Exhibit 3, Couture deposition, page 58; Exhibit 6, Lang deposition, page 82.

10.     Mr. Persson informed Ms. Lang that she did not get the position because they wanted someone with advocacy training who could walk right into the position. Exhibit 6, Lang deposition, page 84. Persson did not recall saying that. Exhibit 7, Persson deposition, page 41.

11.     Ms. Lang did not have advocacy training. Exhibit 14, Lang formal statement for EEO complaint.

12.     When offered the position in October, 2003, Ralph Divasta did not have advocacy training. Exhibit 14.

13.     Despite Mr. Persson's assessment that Mr. Krinsky was unprepared for and displayed an unacceptable attitude during the interview, Mr. Krinsky was still ranked above Lang, even though Mr. Persson indicated that Lang did well during the interview and was prepared. Exhibit 7, Persson deposition pages 32-35.

14.     Any notes taken or compiled by Mr. Couture and Mr. Persson during the first set of interviews in March 2003 are no longer available. It is USPS policy and practice not to maintain interview notes once the selecting official has completed interviewing for the open position. Exhibit 9, Admissions, number 2; Exhibit 12, LaVecchio deposition, page 16; Exhibit 7, Persson deposition, pages 30, 140.

15.     After being rejected by the Review Board for the first posting for labor relations specialist, Mr. DiVasta sought assistance and guidance from Mr. Lopreste, Mr. Persson, Mr. Meier and Dave Papa in an effort to improve his opportunities the next time around. Exhibit 15,

Persson's interview notes for DiVasta.

16.    Mr. Meier advised DiVasta of potential areas of questions for the labor relations specialist interviews. Exhibit 16, DiVasta deposition, pages 19, 24-33.

17.    It is inappropriate for a labor relations manager or peers to give advice regarding potential questions to candidates. Exhibit 12, LaVecchio deposition pages 83-84. It would be inappropriate/rare for someone to review and help revise a candidate's 991 application, especially after the first posting and before the second posting. Exhibit 12, LaVecchio deposition page 59.

18.    Mr. Persson spoke to DiVasta after the first posting on how to improve his chances. Exhibit 7, Persson, deposition page 52; Exhibit 16, DiVasta deposition page 13; Exhibit 15.

19.    Mr. DiVasta sought assistance from Mr. Lopreste and Dave Papa, former Review Board members, after his initial rejection. Exhibit 16, DiVasta deposition pages 11, 24, 28, 43; Exhibit 5, Lopreste deposition page 67. Mr. DiVasta asked Mr. Meier how to improve his chances. Mr. Meier reviewed his (Meier's) previous 991 with Mr. DiVasta. Exhibit 13, Meier deposition pages 24-33. Mr. DiVasta spoke with Mr. Meier after he initially applied for the job. Exhibit 16, DiVasta deposition page 63.

20.    The re-posting in May reduced the requirements for the labor relations specialist position, while at the same time, expanding the potential applicant pool to the entire country. Exhibit 7, Persson, deposition pages 37. Mr. Persson claims he was unaware of the changes in the posting. Exhibit 7, Persson deposition pages 38-40. Exhibits 10, 11.

21.    Despite reducing the requirements for the position and expanding the applicant pool for the re-posting, the Review Board only interviewed 5 candidates, all of whom were from Massachusetts. Exhibit 17.

22.    In October, 2003, Ms. Lang, along with Mr. Walcott and Mr. DiVasta, were the only candidates recommended by the second Review Board to be interviewed by the selecting official. Although Mr. Krinsky and Mr. Kender applied and were interviewed by the Review Board, their names were not recommended to the selecting official for further interviews. Ms. Lang was the only candidate to make it to the final interview stage for both postings. Exhibit 17.

23.    Mr. Persson asked his two subordinates, Mr. Attridge and Mr. Meier, to assist him in interviewing the three remaining candidates for the labor relations specialist position. They agreed. Exhibit 2, Attridge, deposition page 19; Exhibit 13, Meier deposition page 16. Mr. Couture indicated that no one under his general direction had used subordinates in the interviewing process before. Exhibit 3, Couture deposition, page 74.

24.    A series of 15 questions were developed between the three interviewers, with Mr. Persson making the final decisions on the interview questions.  Exhibit 7, Persson deposition pages, 64-66; Exhibit 2, Attridge, deposition page 18.  Mr. Persson never checked whether Mr. Attridge or Mr. Meier had interview training, a prerequisite for conducting interviews.  Exhibit 7, Persson deposition pages 66, 100.

25.    The questions were only finalized after Mr. Persson knew who was recommended by the Review Board for final interviews.  Exhibit 7, Persson, deposition, page 131.

26.    Mr. Persson, Mr. Meier and Mr. Attridge were more familiar with Mr. DiVasta and his work record than with Ms. Lang's .  Exhibit 3, Couture deposition, pages 34; Exhibit 7, Persson deposition pages 50, 112; Exhibit 12, LaVecchio deposition, pages 65-66; Exhibit 2, Attridge deposition, page 27; Exhibit 16, DiVasta deposition pages 15, 20; Exhibit 13, Meier deposition pages 24, 37; Exhibit 6, Lang deposition page 110;

27.    Although the materials were available for review, at no time during the interview and selection process did Mr. Persson, Mr. Meier or Mr. Attridge review the candidates' personnel files, forms 991 (applications), KSA's or check their internal references.  Exhibit 7, Persson, deposition page 117; Exhibit 2, Attridge deposition page 28; Exhibit 3, Couture deposition pages 29-33; Exhibit 12, LaVecchio deposition pages 62-64.

28.    Candidates who have less work place interactions with a selecting official could be at a disadvantage.  Exhibit 12, LaVecchio deposition, page 66.

29.    Although supervisory experience was not a requirement for the position, Mr. Persson did not believe that Lang had any past supervisory experience.  Exhibit 7, Persson deposition, pages142-144.

30.    Although operational experience was not a requirement for the position, Mr. Persson did not believe that Ms. Lang had any past relevant operational experience. Exhibit 7, Persson deposition, pages 32-34.

31.    Mr. DiVasta did not have a college degree.  Exhibit 16, DiVasta deposition, page 30.  Lang has several college degrees, including a law degree, which she earned while at the USPS.  Exhibit 8.  Although a law degree was not a requirement for the position, Attridge, who was attending law school at the time of his deposition, believed the experience sharpened his writing skills.  Exhibit 2, Attridge, deposition pages 57.

32.    The 15 questions for the interview  were of equal weight and were to be scored on a scale of 1-5.  Exhibit 7, Persson, deposition pages 69, 130; Exhibit 2, Attridge, deposition page 21; Exhibit 13, Meier deposition page 20.

8

33.     The three member interview panel did not have a scoring grid to compare the answers given by the candidates with a 'correct answer.' There was no discussion in advance of the interviews as to what would constitute a full and complete response, or even a 'passing' grade. The scoring system was completely subjective. Exhibit 7, Persson deposition, pages 67-80; Exhibit 13, Meier deposition page 21. Meier believed that a score of 51 was good (score he gave to DiVasta) but that 47 was not good enough (score he gave to Lang). Exhibit 13, Meier deposition page 43.

34.     In addition to being subjective, the scoring system was flawed in that Mr. Meier and Mr. Attridge could not give answers to several of the interview questions during their depositions, raising concerns that grading each question was simply guesswork. Exhibit 2, Attridge, deposition page 46; Exhibit 13, Meier deposition pages 46-50.

35.     Despite similar difficulties as Ms. Lang had in the interview, such as nerves and missing question(s), the interviewers were more lenient towards Mr. DiVasta in assessing his interview. Mr. DiVasta testified that he was nervous, sweating profusely, stumbled on several questions- was allowed to redo those questions later, and had a 'fairly decent interview.' Exhibit 16, DiVasta deposition pages 46- 55. Mr. Persson indicated that Mr. DiVasta was nervous and flustered but came out of it. Exhibit 7, Persson deposition pages 76. Mr. Meier indicated that Mr. DiVasta was nervous and missed a couple of questions. Exhibit 13, Meier deposition pages 62. Mr. Persson indicated that Lang did not do poorly, did well on FMLA, sick, and dependent care, but did not nail the hypothetical(s). Exhibit 7, Persson deposition page 72. Mr. Attridge, despite giving a 9 point scoring difference between Ms. Lang and Mr. DiVasta, indicated that there was not a lot of disparity between the two interviews. Exhibit 2, Attridge deposition pages 26.

36.     The interview questions were skewed in favor of Mr. DiVasta's 'experience' in attendance and grievance handling. Of the 15 questions, 1/3 represented this line of questioning: question 10 (FMLA), question 11 (FMLA), question 12 (grievance handling), question 13 ( step 2 grievance issue), and question 14 (bypass step 1 of the grievance process). Overall, Mr. Persson graded Mr. DiVasta 5 points ahead of Ms. Lang (52-47), with questions 10-14 comprising the difference plus some (23-17). Mr. Meier graded Mr. DiVasta 4 points ahead of Ms. Lang (51-47), with questions 10-14 comprising the difference plus some (23-17). Mr. Attridge graded Mr. DiVasta 9 points ahead of Ms. Lang (60-51), with questions 10-14 comprising part of the difference (23-19). Defendant's Exhibits 12-17.

37.     Mr. Persson indicated that the interview makes you or breaks you. Exhibit 7, Persson deposition page 77.

38.     Mr. Couture indicated that he believed that Ms. Lang could not do the job due to lack of operational experience. Exhibit 3, Couture deposition page 112. Ms. Lang has been assigned to a labor relations specialist detail since 2004. Exhibit 7, Persson deposition, page 149.

39.    Mr. Attridge has himself questioned a promotional process in the past when he filed an EEO complaint when a younger female was granted a postmaster's position over him. Exhibit 2, Attridge deposition page 12-13.


Plaintiff, by her attorney

/s/ Gary H. Goldberg
Gary H. Goldberg, Esquire
120 Main Street
Worcester, MA 01608
508 797-1018
BBO No. 553887


April 5, 2006